■ CAROLYN A. MILLER et al., Appellants, v JACK MILLER,

Respondent.—Order of the Supreme Court, New York County (David B. Saxe, J.), entered on or about June 29, 1988, *inter alia,* denying that portion of plaintiffs' motion for summary judgment as sought arrears in child support for 1969 through 1987, effectively denying that part of their motion as sought arrears in maintenance for 1969 through January 1988 and granting her summary judgment for maintenance arrears of $300 per month commencing January 11, 1988, unanimously modified, on the law, to the extent of reversing so much of the order as denied arrears in child support and maintenance, and remanding for a hearing as to any amounts due and as to the waiver of rights to payments under the judgment of divorce.

Plaintiff Carolyn Miller (Mrs. Miller) and respondent John Miller (Mr. Miller) were married in 1956 and divorced on March 7, 1969 pursuant to a judgment of the Superior Court of the State of Connecticut. Their only child, plaintiff Jaclyn Miller (Jaclyn), attained the age of 21 on August 14, 1985.

Pursuant to the Connecticut judgment Mr. Miller was to make monthly payments to Mrs. Miller of $300 in alimony and $200 in child support. Mr. Miller also was to pay $100 each month for the purchase of securities for the benefit of Jaclyn. The securities were to be in the name of Mrs. Miller as guardian, and Mr. Miller was to periodically notify her of the status and value of the securities. Beginning in 1982 Jaclyn resided with Mr. Miller, until, as a result of disagreements between them, she was locked out of the apartment on January 1, 1988.

On or about January 13, 1988 plaintiffs commenced this summary judgment action (CPLR 3213) for, *inter alia,* arrears in child support and maintenance, and for moneys from the purchase of securities due under the Connecticut judgment.

Plaintiffs concede that any claim for child support and maintenance due prior to January 1982 is precluded by the six-year Statute of Limitations. (CPLR 213 [2]; *Tauber v Lebow,* 65 NY2d 596, 598 [1985].) Nor do plaintiffs seek child support after August 14, 1985. However, plaintiffs contend that their cause of action for the securities did not accrue until Jaclyn attained the age of 21 on August 14, 1985.

The IAS court denied maintenance, child support and moneys for the purchase of securities due after 1982, finding that Mrs. Miller failed to demand payment after 1978 and that she thereby waived her right to payments due after that time. We modify for the reasons that follow.

The question of whether a cause of action for arrears could

be waived simply by a claimant's failure to demand payment was addressed by this court in *Morris v Morris* (74 AD2d 490 [1st Dept 1980]). There the plaintiff wife, after receiving one default judgment for maintenance arrears, waited some 11 years before commencing a second action for arrears. Plaintiff disputed the defendant ex-husband's claim that an accord and satisfaction had been reached some nine years earlier. We denied summary judgment to both parties and directed a hearing on the factual issue of waiver relying on the general rule as follows: " 'Waiver may be express or implied * * * it may be written or verbal. It may be established by express statement or agreement, by acts and conduct manifesting an intent and purpose not to claim the alleged advantage or from which an intention to waive may reasonably be inferred, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive' (21 NY Jur, Waiver, § 93). It is also stated that '[w]hile a waiver may result from acquiescence, it cannot be inferred from mere silence' (21 NY Jur, Waiver, § 94)." (74 AD2d, *supra,* at 493.)

Similarly, in *Friedman v Exel* (116 AD2d 433 [1st Dept 1986]), an action for child support arrears pursuant to Domestic Relations Law § 244 wherein the mother waited 12 years after the father had stopped payments to commence to action, we reversed a finding by Special Term that the mother's failure to make any prior demands for payment was not a waiver of her right to support, and remanded for a hearing. In support of her contention that there was no waiver, the mother in *Friedman* asserted lack of prior knowledge of the father's whereabouts and the father's violent nature. Again noting that the failure to demand payment is only one factor to be considered in light of the relevant circumstances, we stated: "whatever the circumstances, the nature of this inquiry into the mother's expectations of reimbursement is such as to almost always require a hearing." (116 AD2d, *supra,* at 436.)

In opposition to Mr. Miller's cross motion to dismiss the complaint and for summary judgment, Mrs. Miller alleges that in the years following their divorce, she and Mr. Miller regularly communicated and that she consistently demanded full payment of moneys due. She attaches correspondence received from Mr. Miller between 1969 and 1978 in which Mr. Miller acknowledges her demands for payments and his legal obligations under the Connecticut judgment, and in which he expresses an intention to meet these obligations, including the payment of all arrears, when he becomes more financially

successful. Mrs. Miller alleged in her affidavit that since 1978 Mr. Miller's promises to pay were made verbally but were of the same content as his written communications.

Thus, the record raises an issue of fact concerning the amounts due and the waiver of rights to maintenance, to the securities, and to child support, particularly during the period in which Jaclyn resided with Mr. Miller. Concur—Sullivan, J. P., Ellerin, Smith and Rubin, JJ.